1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOHN SILVERMAN, ET AL.,

　　　　Plaintiffs,

　　vs.

WELLS FARGO & COMPANY, ET AL.,

　　　　Defendants.

CASE NO. 18-cv-03886-YGR

**ORDER GRANTING MOTION TO DISMISS**
Re: Dkt. No. 27

　　　　Plaintiffs John Silverman and J. Edwards Jewelry Distributing, LLC ("J. Edwards") bring this action individually and on behalf of all other persons similarly situated against defendants Wells Fargo & Company, Wells Fargo Bank, N.A. (collectively, "Wells Fargo") and Does 1-10 for violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"). (Dkt. No. 1 ("Compl.") at 1-2.) Specifically, plaintiffs allege that Wells Fargo "has created and maintains a credit card program through which it actively encourages retailers to build the 'fees' that these merchants must pay Wells Fargo into the regular price of goods and services, while representing to retail customers that the goods and services that they purchase are being financed at zero percent interest." (*Id.*at 2.) In so alleging, plaintiffs raise three causes of action: (A) violations of the UCL; (B) violations of TILA; and (C) unjust enrichment. (*Id.* at 36-38.)

　　　　Now before the Court is Wells Fargo's motion to dismiss all of plaintiffs' claims for failure to state a claim under Rule 12(b)(6). (Dkt. No. 27 ("MTD").) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS** Wells Fargo's motion to dismiss but with leave to amend as to plaintiffs' UCL and unjust enrichment claims. Thus, plaintiffs may file an amended complaint.

## I.   BACKGROUND

Relevant to the instant motion, plaintiffs allege as follows:

Plaintiff John Silverman resides in El Paso, Texas and is the president and manager of plaintiff J. Edwards, a Nevada Limited Liability Corporation with its principal place of business in El Paso, Texas. (Compl. at 2-3.) Defendant Wells Fargo & Company is a Delaware corporation with its principal place of business in San Francisco, California. (*Id.* at 3.) Defendant Wells Fargo Bank, N.A. headquartered in and operated out of San Francisco, California. (*Id.* at 3-4.)

Defendants actively promoted to plaintiffs and putative class members, as well as retail customers, a financing scheme to finance the sale of services and merchandise (the "Program").[1] (*Id.* at 9.) The Program was advertised at, promoted at and sold to potential retail customers through plaintiffs' and the putative class members' brick and mortar retail establishments as well as plaintiffs' and putative class members' websites. (*Id.* at 9-10.) During all relevant times, the Program was advertised and marketed by use of such terms as "no interest," "interest free," "same as cash," "zero interest," and "0% APR" or "no interest if paid in full within [xx] months." (*Id.* at 10.) The Program allowed participating retailers to offer several different prices and financing programs for a single item, including "no interest" financing for 12, 24, 28, or 60 months. (*Id.*) Based on the length of time financed, the discount rate charged to the merchant by defendants is adjusted to reflect the time price differential. (*Id.*) The discounts can vary depending on the length of time the customer is financing. (*Id.*) The discount can amount to as much as 22.5% for the 60-month program. (*Id.*)

At all relevant times, plaintiffs and all putative class members were parties to a Wells Fargo Dealer Agreement (the "Agreement"). (*Id.*) Pursuant to the Agreement, defendants exercised a great deal of control over what participating retailers, including plaintiffs and putative class members, could say to customers regarding both the Program and the interest rate. (*See id.* at 11-17.) The Agreement prohibits participating retailers, including plaintiffs and putative class members, from disclosing any Program fees or discount rates to any third party.

_____

[1] Specifically, plaintiffs participated in a program called the "Jewelry Advantage Program." (Compl. at 9.)

(*Id.* at 17.)  Wells Fargo also provided instruction to plaintiffs and putative class members on how to manage the costs of financing.  (*Id.* at 17-18.)  Specifically, Wells Fargo instructed that "[i]f your business wants to account for the cost of financing (i.e., discount fee, transaction fee, program fees, etc.), the cost must be included in your product's overall price versus being included as a fee charged to customers using our Card to finance their purchase."  (*Id.*)

As a result of the Agreement and accompanying instruction, the local taxing authority assessed a sales tax on the "overall price" of goods and services sold pursuant to the Program, which included the fee or fees charged by defendants.  (*Id.* at 18-19.)  However, finance charges are exempt from sales taxes.  (*Id.* at 19.)  Thus, because a portion of the amount financed by the consumer is improperly characterized by defendants as the retail purchase price rather than what it really is – a hidden finance charge – sales tax is improperly charged to the consumer on the hidden finance charge.  (*Id.* at 20.)  "Unwitting participating retailers [including plaintiffs and putative class members] remit the entire tax – including the tax on the undisclosed finance charge – to their local taxing authorities."  (*Id.* at 20-21.)  Accordingly, "the portion of that sales tax applicable to the hidden finance charge is retained by Wells Fargo and not paid to plaintiffs and putative class members."  (*Id.* at 21.)

Defendants finance approximately $8 billion worth of sales under the Program each year.  (*Id.* at 28.)  Thus, defendants collect approximately $800 million in hidden and illegal finance charges plus approximately $64 million in sales tax (based on national sales averages) per year.  (*Id.*)  "The amount of sales tax on illegal finance charges paid to the various local taxing authorities in error due to the hidden finance charges over the course of four years is approximately $256 million."[2]  (*Id.*)

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

---

[2]  Plaintiffs aver that this is the amount that should be reimbursed to them and putative class members.  (Compl. at 28.)

1   sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d

2   1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

3   Cir. 1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible

4   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its

5   face "when the plaintiff pleads factual content that allows the court to draw the reasonable

6   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

7   678 (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a

8   mere possibility, the claim must be dismissed.  *Id*. at 678-79; *see also In re Gilead Scis. Sec. Litig.*,

9   536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true

10  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

11  inferences.").

12      If a court dismisses a complaint, it should give leave to amend unless "the pleading could

13  not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

14  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

15  **III.  DISCUSSION**

16      Plaintiffs raise three causes of action against defendants: (A) violations of California's

17  UCL; (B) violations of the TILA; and (C) unjust enrichment.[3]

18          **A.  Violations of California's Unfair Competition Law**

19      California's Supreme Court has made clear that there is a strong presumption against the

20  extraterritorial application of California law, including the UCL.  *Ehret v. Uber Technologies,*

21  *Inc.*, 68 F.Supp.3d 1121, 1129-30 (N.D. Cal. 2014) (citing *Sullivan v. Oracle Corp.*, 51 Cal.4th

22  1191 (2011) (applying the resumption against extraterritorial application to the UCL)).  The

23  California UCL is a state statutory remedy designed to address harm suffered by residents of

24  California, or harm to non-residents that occurred in California.  *See Northwest Mortg., Inc. v*

25  *Superior Court*, 72 Cal. App. 4th 214, 225 (1999) (holding that the UCL cannot provide recovery

26  for "injuries suffered by non-California residents, caused by conduct occurring outside of

27  _____

28      [3]  The Court notes that although plaintiffs purport to bring these claims on behalf of a
    nationwide class, plaintiffs have not alleged that the Program extended nationwide.

California's borders, by defendants whose headquarters and principal places of operations are outside of California"). "In determining whether the UCL . . . appl[ies] to non-California residents, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which [the relevant] decisions were made." *In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 917 (C.D. Cal. 2011).

Here, parties do not dispute that Wells Fargo has its principle place of business in California. (*See* Compl. at 3, Motion at 18.) Accordingly, it is possible that the decision to offer and promote the financing program at issue here emanated from California. However, plaintiffs only allegations that connect Wells Fargo's alleged wrongful conduct to the State of California are their allegations that (1) Wells Fargo & Company and Wells Fargo Bank, N.A. have their principal places of business in San Francisco, California; (2) Wells Fargo Bank, N.A. is headquartered in San Francisco, California; and (3) Wells Fargo "engage[s] in substantial sales and marketing of their financial products and services in the State of California."[4] (Compl. at 3, 36.) These allegations, alone, do not suffice to show that it is plausible that the alleged conduct occurred, at least in part, in California.[5] *See Cannon v. Wells Fargo Bank N.A.*, 917 F.Supp.2d 1025, 1056 (N.D. Cal. 2013); *see also Gross v. Symantec Corp.*, 2012 WL 3116158, at *7 (N.D.

---

[4] In plaintiffs' opposition to Wells Fargo's motion, plaintiffs aver that they have "alleged that in addition to being headquartered in California, Defendants' unlawful conduct emanated from California such that the UCL will apply." (Dkt. No. 34 ("Opp.") at 13.) In support thereof, plaintiffs cite to various portions of the complaint, which they characterize as describing "Defendants 'nationwide [sic] program[,]" "how Defendants' [sic] advertised their scheme[,]" "how Plaintiffs 'turned' their customers over to Defendants[,]" "the agreements between Defendants and Plaintiffs (and the putative class)[,]" "requirement that receipts be forwarded to Defendants[.]" (*Id.*) However, the Court finds that none of the passages cited by plaintiffs support the assertion that plaintiffs have alleged anything more than the fact that defendant Wells Fargo, N.A. is headquartered in San Francisco, California.

[5] Compare the primary case on which plaintiffs rely, *Wershba v. Apple Computer, Inc.*, in which plaintiff alleged that (1) defendant, Apple, is a California corporation, with its principal place of business in Cupertino; (2) the brochures promising the free telephone support, which formed the basis of the alleged wrongdoing, were prepared and distributed from California; and (3) the core decision at issue, namely the change of policy made in October 1997, was made at Apple's headquarters in California. 91 Cal.App.4th 224, 242 (2001) *disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018).

United States District Court
Northern District of California

Cal. July 31, 2012) (nothing that, while plaintiff had alleged that defendant was headquartered in California, "several courts have found that this allegation is not enough to create a plausible inference that the unlawful conduct emanated from that location"); *In re Toyota Motor Corp.*, 785 F.Supp.2d at 917 (same). Plaintiffs do not allege any of their injuries occurred in California, that plaintiffs owned any jewelry stores in California, or that they sold any good financed through the Program in California.

Moreover, plaintiffs do not allege any facts suggesting that Wells Fargo's alleged wrongful conduct occurred in, or had any connection to, California. Plaintiffs' allegation that Wells Fargo "engage[s] in substantial sales and marketing of their financial products and services in the State of California" (Compl. at 36), does not connect any of the particular wrongdoing described in the complaint to the State of California. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Plaintiffs do not allege that Wells Fargo developed or administered the Program in California or that any of the advice or guidance plaintiffs supposedly received from Wells Fargo came from employees located in California.

The UCL is aimed at regulating harm suffered by residents of California, which plaintiff is not, or harm to non-residents that occurred in California. The Court finds that plaintiff has not alleged facts suggesting that he suffered harm in California.[6] Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss plaintiffs' UCL claim with leave to amend. Plaintiffs may file an amended complaint to allege facts sufficient to create a plausible inference that the unlawful conduct at issue emanated from California. *See Cannon*, 917 F.Supp.2d at 1055-56 (holding that where plaintiff fails to provide "additional facts suggesting that Wells Fargo did make the decision from California (*i.e.*, the tortious conduct occurred at least in part in California)" the UCL does not apply to harm befallen by non-California residents); *see also Iqbal*, 556 U.S. at 678-79.

\\

\\

---

[6] The Court also notes that the Agreement contains a choice of law provision selecting the laws of the state North Dakota to govern, construe, and enforce the terms thereof. (Dkt. No. 1-1, Exhibit 1 to Plaintiffs' Complaint, ("Agreement") at 34.)

### B.  Violations of the Truth in Lending Act

Plaintiffs appear to concede that their TILA cause of action is time-barred.  (Opp. at 1.)  Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss plaintiffs' TILA claim and need not reach the substantive sufficiency thereof.

### C.  Unjust Enrichment

Plaintiffs aver that as a result of the defendants' unlawful and deceptive practices, defendants were enriched at the expense of plaintiffs and putative class members through collection and retention of improper sales tax on items sold by plaintiffs and putative class members, which defendants unlawfully and/or deceptively reaped from customers.  (Compl. at 39.)  With respect to this claim, plaintiffs allege that "[u]nwitting participating retailers [including plaintiffs and putative class members] remit the entire tax – including the tax on the undisclosed finance charge – to their local taxing authorities[,] and accordingly, that "the portion of that sales tax applicable to the hidden finance charge is retained by Wells Fargo and not paid to plaintiffs and putative class members."  (*Id.* at 20-21.)  Plaintiffs estimate that "[t]he amount of sales tax on illegal finance charges paid to the various local taxing authorities in error due to the hidden finance charges over the course of four years is approximately $256 million."  (*Id.* at 21.)

Under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Finance v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Here, plaintiffs' participation in the Program is governed by the Agreement.  (Compl. at 10-17.)  The Agreement specifically addresses payments under the Program and stipulates therein that Wells Fargo "will pay [retailers] the net amount of All Invoices less applicable discount rate and the amount of all Credit Memos presented to [Wells Fargo] by [retailer] in accordance with [Wells Fargo's] Instructions and Procedures and accepted by [Wells Fargo] during the period."  (Agreement at 28.)

Moreover, this case is distinguishable from those on which plaintiffs rely for the proposition that it is premature to dismiss an unjust enrichment claim on a motion to dismiss where it is unclear whether the applicable contracts govern the relief sought by the plaintiffs.  (Opp. at 19-20 (citing *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915 (N.D. Cal. 2013); *In re*

1    *Countrywide Fin. Corp. Mortg. & Sales Prac. Litig.*, 601 F.Supp.2d 1201, 1220-21 (S. D. Cal.

2    2009).)  Here, the Agreement specifically states that plaintiffs (1) will not add charges for card

3    sales; (2) will follow applicable law; and (3) agree to pay Wells Fargo the agreed upon discount

4    rate.  (Agreement at 30-31.)  Thus, plaintiffs' requested relief, a refund of tax payments paid by

5    plaintiffs to tax authorities resulting from plaintiffs' pricing model, is foreclosed by the

6    Agreement.

7        The Court finds that plaintiffs' obligation to remit sales tax on sales made pursuant to the

8    Program, and their right to recoup the alleged overpayment of taxes from Wells Fargo, if any, are

9    defined by the Agreement.  *See Paracor*, 96 F.3d at 1167.  Accordingly, the Court **GRANTS** Wells

10   Fargo's motion to dismiss plaintiffs' unjust enrichment claim with leave to amend to the extent

11   possible.

12   **IV.    CONCLUSION**

13       For the foregoing reasons, the Court **GRANTS** Wells Fargo's motion to dismiss with leave

14   to amend as to plaintiffs' UCL and unjust enrichment claims.[7]  Plaintiffs shall file an amended

15   complaint by **December 7, 2018**.  Defendant shall respond fourteen (14) days after filing.  To the

16   extent a motion is filed, in light of the holidays, plaintiff shall file a response within twenty-one

17   (21) days thereafter.

18   \\

19   \\

20

21       [7]  In connection with its motion to dismiss, Wells Fargo requests that the Court take
     judicial notice of eight documents.  (Dkt. No. 28.)  Specifically, Wells Fargo requests that the
22   Court take judicial notice of four New Mexico state court documents as well as three iterations of
     the Wells Fargo Financial Bank General Dealer Agreement, Revolving Sales, executed by
23   plaintiffs in 2006, 2008 and 2010, respectively, and an Amendment therefore, executed in 2011.
     (*Id.* at 3-4.)  The state court records have been filed with the State of New Mexico and are
24   maintained on the court' s website.  Accordingly, the Court **GRANTS IN PART** Wells Fargo's
     request as it applies to the public court records, namely Exhibits A, B, G, and H to Wells Fargo's
25   request for judicial notice.  *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a
     court may take judicial notice of matters of public record" and documents whose "authenticity . . .
26   is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted)
     (alterations in original).  The Court **DENIES IN PART** Wells Fargo's request as it applies to the
27   remaining documents, namely, Exhibits C, D, E, and F to Wells Fargo's request for judicial notice.

28

This Order terminates Docket Number 27.

**IT IS SO ORDERED.**

Dated: November 19, 2018

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**