UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J. EDWARDS JEWELRY DISTRIBUTING, LLC.,**<br><br>    Plaintiff,<br><br>    vs.<br><br>**WELLS FARGO & COMPANY, ET AL.,**<br><br>    Defendants. | CASE NO. 18-cv-03886-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 41 |

Plaintiff J. Edwards Jewelry Distributing, LLC ("J. Edwards") brings this action individually and on behalf of all other persons similarly situated against defendants Wells Fargo & Company, Wells Fargo Bank, N.A. (collectively, "Wells Fargo") and Does 1-10 for violating the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").[1] (Dkt. No. 40 ("FAC") at 1-2, 38-39.) Specifically, plaintiff alleges that Wells Fargo "has created and maintains a credit card program through which it actively encourages retailers to build the 'fees' that these merchants must pay Wells Fargo into the regular price of goods and services, while representing to retail customers that the goods and services that they purchase are being financed at zero percent interest[,]" (the "Program") and, thereby, "misled [plaintiff and class members] into promoting [d]efendants' illegal financing scheme, and into paying unnecessary sales taxes." (*Id.* at 2, 39.) On November 19, 2018, the Court granted Wells Fargo's motion to dismiss plaintiff's initial complaint and provided plaintiff leave to amend. (Dkt. No. 39 ("MTD Order").) Plaintiff filed its first amended complaint ("FAC") on December 6, 2018. (FAC.)

---

[1] The Court notes that although plaintiff's FAC refers to violations of the Truth in Lending Act ("TILA"), plaintiff appears to have omitted from its FAC the cause of action for violation of TILA, which was included in the initial complaint. (*Compare* Dkt. No. 1 ("Initial Compl.") at 37-38 *with* FAC at 38-39.)

Now before the Court is Wells Fargo's motion to dismiss plaintiff's FAC for failure to state a claim under Rule 12(b)(6).[2] (Dkt. No. 41 ("MTD").) Having carefully considered the pleadings and the papers submitted, as well as oral argument from counsel on February 5, 2019, and for the reasons set forth more fully below, the Court hereby **GRANTS** Wells Fargo's motion to dismiss with leave to amend. Therefore, plaintiff may file a second amended complaint.

I. **BACKGROUND**

The background giving rise to this action is well-known, and the Court will not repeat it here. (*See* MTD Order at 2-3 (summarizing plaintiff's allegations).) Plaintiff's FAC contains the following additional allegations:

> Defendants' unlawful and unfair business practices as detailed above [and below] emanate from California. Wells Fargo Bank N.A.'s principal place of business is San Francisco, California. As set forth explicitly in Defendants' internet advertising for these programs, Defendants' unlawful business practices are "provided by Wells Fargo Bank, N.A." Further, when Named Plaintiff made inquiries with Defendants regarding the unlawful programs and practices discussed herein, it was specifically directed towards the business unit and managers that operated the program(s). These individuals work from and in California. Indeed, Named Plaintiff's account representative stated directly that these issues had to be addressed with the business unit's managers in California. Upon information and belief, Defendants' business practices as described herein were created, managed and controlled by their business units and managers in California. Named Plaintiff is also informed and believes that, based on the representations by Defendants to Named Plaintiff: (1) the decisions regarding the Jewelry Advantage Program [and other programs operated by Defendants in the same manner] were made by Defendants in California; (2) the Jewelry Advantage Program [and the other programs operated by Defendants in the same manner] were conceived of by Defendants in California; (3) the promulgation by Defendants of the unlawful and unfair business practices described herein occurred in California; (4) the sales and marketing for Defendants' unlawful and unfair business practices described herein occurred and were created by Defendants in California and emanated from California; and (5) Defendants' improperly retained monies from their unlawful and unfair business practices described herein in California at Defendants' principal place of business in

---

[2] In support of its motion, Wells Fargo requests that the Court take judicial notice of four New Mexico state court documents. (*See* Dkt. No. 42 ("RJN").) The Court previously took judicial notice of these documents in its order dismissing plaintiff's initial complaint, (*see* MTD Order at 8 n. 7), and finds judicial notice appropriate here for the same reasons as stated in that order. Accordingly, the Court **GRANTS** Wells Fargo's request for judicial notice of these public records. The Court will afford them their proper evidentiary weight.

> California. Moreover, there are numerous other class members who reside in California that have been injured in fact and lost money or property as a result of Defendants' unlawful and unfair business practices described herein.

(FAC at 29-30.)[3]

Additionally, and relevant to the instant motion, plaintiff alleges as follows: In 2008 the Albuquerque office of the New Mexico Attorney General began investigating the sales practices of J. Edwards. (*Id.* at 24.) On October 11, 2012, Lori Chavez, then an Assistant Attorney General in that office, sent an email to counsel for J. Edwards, in which she stated that the Attorney General's office had been "reviewing the state of the law as it concerns the offering of discounts by merchants to the public based upon the form of payment." (*Id.* at 24-25 (citing FAC, Ex. 5).) Chavez's email further indicated that, although the two primary sources of law—TILA and the Electronic Fund Transfer Act ("EFT")—do not apply to J. Edwards because TILA regulates creditors and EFT regulates payment card networks involving electronic fund transfers, neither of which apply to J. Edwards, the Attorney General's office "maintained [its] position that the application of discounts, previously utilized by J. Edwards, constitutes a hidden finance charge." (*Id.*)

Plaintiff attaches to its complaint a copy of the email from Chavez, as well as a letter from J. Edwards representative John Silverman to Wells Fargo Bank, N.A.'s Executive Vice President and General Counsel dated January 27, 2017 and a letter from J. Edwards attorney Robert Skipworth to Warren Buffett dated June 12, 2017. (*See* FAC,

---

[3] Plaintiff's FAC also eliminates former plaintiff, John Silverman, and any reference thereto, (*see, e.g.*, FAC at 1) and omits the second and third causes of action previously alleged in the initial complaint. (*Compare* Initial Compl. at 37-39 *with* FAC at 38-39.) Otherwise, plaintiff's FAC is identical to the complaint initially filed on June 28, 2018. Plaintiff's FAC also attaches seven exhibits, identical to those attached to the initial complaint. (*See* Dkt. Nos. 1-1, 40-1.)

3

Exs. 5, 6, 7.) In the January 2017 letter, Silverman writes:

> While our claim of "interest free" financing was the subject of many conversations with customers, the issue gained the attention of the Attorney General. The AG's position was that transactions with customers, which included the WF discounts and our corresponding pricing methods, were based on time, price differential. Furthermore, our pricing system with inflated prices to cover the WF discounts, were not "interest free" to customers but instead prices that included undisclosed finance charges. All elements of our transactions were not only a violation of TILA laws, but the advertising and promotion of the pricing as "interest free" violated various laws regarding deceptive trade, false advertising and unfair trade practices. The cost to defend and settle the matter with the AG was several hundred thousand dollars.

(FAC, Ex. 6 at ECF 53.) The letter also states that following a Texas sales tax audit, J. Edwards' attorney "has agreed with the AG's position and determined that our financing programs were not 'interest free' rather included undisclosed finance charges paid to WF by the customer[,]" and that "[b]ecause we paid sales tax on the entire sale amount, which included finance charges, [our attorney] has determined that we have overpaid sales tax amounts, as finance charges are not subject to sales tax." (*Id.*) In the June 2017 letter, Skipworth writes:

> J. Edwards was a Wells Fargo merchant dealer for many years and then became aware that the company was participating in a fraudulent financing scheme promoted by Wells Fargo. The Attorney General of the State of New Mexico filed suit against J. Edwards which centered around Wells Fargo's "zero interest" financing scheme in which J. Edwards offered its customers Wells Fargo's long term financing plans at zero interest. Unfortunately, the "zero interest" was not actually zero interest but instead had interest hidden in the prices consumers paid to Wells Fargo. The AG suit alleged that J. Edwards was violating many of the Truth-in-Lending Act (TILA) Regulation Z requirements with practically every sale. J. Edwards' method of pricing, discounting, payment collection and sales tax collection violated TILA Regulation Z leading to charges of deceptive trade, false advertising, unfair business practices and fraud.

(FAC, Ex. 7 at ECF 57.)

\\

\\

4

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

A claim for violation of the UCL must be brought within four years of the date the cause of action accrues. Cal. Bus. & Prof. Code § 17208. Under California law, a "cause of action accrues when [it] is complete with all of its elements—those elements being wrongdoing, harm, and causation." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (internal quotation marks and citations omitted). Said another way, "a UCL deceptive practices claim should accrue only when a reasonable person would have discovered the factual basis for a claim." (*Id.* at 1195.)

Here, plaintiff alleges that Wells Fargo "has created and maintains a credit card program through which it actively encourages retailers to build the 'fees' that these merchants must pay Wells Fargo into the regular price of goods and services, while representing to retail customers that the goods and services that they purchase are being financed at zero percent interest[,]" and, thereby, "misled [plaintiff and class members] into promoting [d]efendants' illegal financing scheme, and into paying unnecessary sales taxes." (FAC at 2, 39.)

The exhibits attached to the FAC show that plaintiff learned of the allegedly illegal nature of Wells Fargo's credit card Program as a result of the New Mexico Attorney General's investigation and lawsuit. (*See* FAC, Ex. 6 at ECF 53; Ex. 7 at ECF 57.) Plaintiff has alleged in its FAC that the Attorney General's office contacted J. Edwards in October of 2012 and informed plaintiff of the office's position that although the TILA and EFT do not apply to J. Edwards, "the application of discounts, previously utilized by J. Edwards, constitutes a hidden finance charge" as defined by those statutes. (FAC at 24-25.) Therefore, as of October 2012, plaintiff had notice that Wells Fargo's credit card Program constituted an illegal financing scheme under TILA and EFT and therefore, reasonably could have discovered, and seemingly did discover, the factual basis for its UCL claim that it has been misled regarding the nature of that financing scheme. *Aryeh*, 55 Cal. 4th at 1195. Thus, based on the face of plaintiff's complaint and the exhibits attached thereto, the statute of limitations on plaintiff's UCL claims against Wells Fargo regarding the alleged illegal financing scheme expired in October 2016.[4] *See* Cal. Bus. & Prof. Code § 17208; *see also*

---

[4] The Court notes that the New Mexico state court documents submitted by Wells Fargo for judicial notice support this conclusion. On December 16, 2009, J. Edwards filed a complaint against the New Mexico Attorney General for declaratory judgment in the Second Judicial District Court of the State of New Mexico, County of Bernalillo. (*See* Dkt. No. 42-1, Ex. A ("State Compl.").) The complaint states that "J. Edwards has entered into an arrangement with the Wells Fargo Bank through which Wells Fargo extends credit to J. Edwards' customers." (*Id.* ¶ 21.) The complaint further states that J. Edwards "seeks a judicial declaration that its pricing complies with applicable federal and state law." (*Id.* ¶ 25.) The Attorney General responded and filed counter-claims for violations of the New Mexico Unfair Practices Act and the False Advertising Act on January 15, 2010. (*See* Dkt. No. 42-1, Ex. B ("State Answer").) Therein, the Attorney General states that J. Edwards "practice of charging an increased or greater sales price for credit transactions than for cash transactions constitutes a hidden finance charge." (*Id.* ¶ 31.) The parties filed a partial stipulated consent decree on August 28, 2012. (*See* Dkt. No. 42-1, Ex. C ("Decree").) Therein, "without the admission of any violation of law or wrongdoing while offering the financing, leasing and sale of diamonds and jewelry to the general public," J. Edwards stipulated to a permanent injunction regarding the financing, leasing and sale thereof. (*Id.*)

1  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013).

To avoid application of the statute of limitations, plaintiff first avers that Wells Fargo's conduct subjects it to the "continuous wrong" and "continuous accrual" principles of statutes of limitation and, therefore, that plaintiffs incurred an injury in fact under the UCL within four years of the initiation of this action.[5] (Dkt. No. 43 ("Opp.") at 10-11, 12.) "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period . . . . Because each new breach of such an obligation provides all the elements of a claim – wrongdoing, harm, and causation . . . – each may be treated as an independently actionable wrong with its own time limit for recovery." *Aryeh*, 55 Cal.4th at 1199. Accordingly, a plaintiff may pursue wrongs for which the statute of limitations has not yet expired, even if earlier wrongs would be barred. *Id.* at 1199-1200.

Plaintiff argues that Wells Fargo's conduct falls into this category because their "obligations to operate their programs in compliance with Federal law is a continuing obligation of both TILA and the UCL." (Opp. at 11.) As a preliminary matter, the Court is not aware of, and plaintiff does not provide, any authority for finding that compliance with federal, or state, law constitutes a continuing obligation within the meaning of the continual accrual principle. (*See id.* (citing *Bilyue v. Guy*, No. CV 17-4546 FMO (ASx), 2017 WL 7066400, at *1 (C.D. Cal. 2017) (applying the theory of continuous accrual to plaintiffs' UCL claims and finding that plaintiffs

---

Therefore, it appears that plaintiff was on notice of the potential illegality of Wells Fargo's credit program at least as early as December 2009.

[5] Although plaintiff's FAC does allege that J. Edwards "has suffered such injuries by Defendants' conduct within four years of the filing of the Complaint in this action[,]" nowhere in the FAC does plaintiff include any information or allegation regarding transactions occurring within the four-year window immediately preceding filing of the initial complaint. (FAC at 39; *see also* Opp. at 12 (stating that that Program transactions "occurred within four years of the filing of this action").) During the February 5, 2019 hearing, plaintiff's counsel informed the Court that a Program transaction did occur within the four-year window and that he believed the transaction occurred in Texas, however he could not provide any additional information. To the extent that plaintiff files a second amended complaint, it must include a factual basis for the allegation that Program transaction occurred within the four-year period immediately preceding plaintiff's filing of the initial complaint. Counsel is reminded of his Rule 11 obligations.

7

may recover under a recording contract for the four years preceding the filing of the complaint).)[6]

Plaintiff does allege that it "was injured each and every time a consumer used the Jewelry Advantage program operated by [d]efendants at [p]laintiff's stores[,]" but fails to allege any continuing contractual obligation underlying that harm of which it was a party.[7] (*See* Opp. at 12.)

Second, plaintiff argues that its "claim for violation of the UCL are [sic] also subject to delayed discovery and fraudulent concealment." (Opp. at 13 (citing FAC at 30-34).) Plaintiff alleges in its FAC that Wells Fargo "actively concealed the TILA violations . . . while simultaneously touting the legality and soundness of the program." (FAC at 31; *see also id.* at 32.) Plaintiff does not address, either in the FAC or its opposition, the fact that J. Edwards appears to have been on notice of the potentially illegality of the Program at least as early as October 2012.[8] (*See id.*; *see also* Opp. at 13 (stating simply "Here, Plaintiff has alleged sufficient facts for the Court to deny (at the pleading stage) Defendants' Motion").) As noted above, as of at least October 2012, plaintiff had notice that Wells Fargo's credit card Program constituted an

---

[6] *See, by contrast,* cases regarding ongoing contractual obligations: *Tsemetzin v. Coast Fed'l Sav & Loan Ass'n*, 57 Cal.App.4th 1334, 1344 (1997) (finding that the statute of limitations commenced under a rental agreement for each month when the increased payment was due pursuant to rental contract and not paid); *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1388-89 (2004) (finding that because performance of underlying contractual obligations is severable due to monthly payment obligation and therefore created a recurring obligation); *Walker v. Blackground Records, LLC*, 2017 WL 8186040, *4 (E.D. Cal. 2017) (finding continuous accrual where defendants allegedly failed to make "periodic" payments owed under various recording contracts).

[7] The Court notes that the Program dealer agreement, which plaintiff attached to its complaint, provides for termination by either party at any time, specifying that the agreement "will remain effective until one party gives the other party written notice of its decision to terminate" the agreement. (Dkt. No. 40-1, Ex. 1 ("Agreement") ¶ 10(a).) Plaintiff has not alleged that it was forced to remain a party to the agreement. Nor has plaintiff alleged that the customer's use of the Program resulted in a recurring payment scheme that might create a continuing obligation. (*See* FAC at 18-20 (describing a Program transaction as a one-time exchange between customer, Wells Fargo, and plaintiff).)

[8] Nor does plaintiff address the fact that J. Edwards entered into a consent decree with the Attorney General of New Mexico on August 28, 2012, the terms of which included a permanent injunction that instructing that "should [J. Edwards] offer third party financing through a third party financing company, such as Wells Fargo, [J. Edwards] shall not charge any additional fees in excess of the sticker price[,]" which is elsewhere defined as "the price at which [J. Edwards] actually and regularly sells jewelry." (Decree ¶¶ 14, 11.) During the February 5, 2019 hearing, plaintiff's counsel could not confirm whether plaintiff had violated the consent decree by engaging in Program transactions in New Mexico after August 28, 2012.

8

illegal financing scheme under TILA and EFT and reasonably could have discovered, and seemingly did discover, the factual basis for its UCL claim that it has been misled regarding the nature of that financing scheme. (*See* FAC, Ex. 6 at ECF 53; Ex. 7 at ECF 57; *see also* State Compl. ¶ 21; State Answer ¶ 31; Decree ¶¶ 11, 14); *c.f. Cortez v. Second Chance Home Loans, LLC*, No. 2:18-cv-07896 WBS EFB, 2018 WL 6216426, at *2 (E.D. Cal. Nov. 28, 2018) (noting that the question of "when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion"). Therefore, plaintiff cannot credibly claim that the alleged illegality of the Program was actually concealed. Accordingly, based on the allegations in the FAC, because the four-year statute of limitations on plaintiff's UCL claim expired at least as early as October 2016, well before plaintiff filed the initial complaint in the instant action on June 28, 2018, and plaintiff has not sufficiently alleged application of the continuous accrual or delayed discovery and fraudulent concealment doctrines, the Court finds that plaintiff's claim is barred by the statute of limitations.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Wells Fargo's motion to dismiss. Plaintiff requests leave to amend, which the Court provides reminding counsel of their Rule 11 obligations. To the extent that plaintiff has a basis for filing a second amended complaint, plaintiff shall so file by **March 8, 2019**. If not filed, the FAC will be dismissed with prejudice. Defendants shall respond fourteen (14) days later.

This Order terminates Docket Number 41.

**IT IS SO ORDERED.**

Dated: February 8, 2019

*[signature]*

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**