# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J. EDWARDS JEWELRY DISTRIBUTING, LLC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**WELLS FARGO & COMPANY, ET AL.,**<br><br>Defendants. | CASE NO. 18-cv-03886-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 56 |

Plaintiff J. Edwards Jewelry Distributing, LLC ("J. Edwards") brings this action individually and on behalf of all other persons similarly situated against defendants Wells Fargo & Company, Wells Fargo Bank, N.A. (collectively, "Wells Fargo") and Does 1-10 for violating the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"). (Dkt. No. 55 ("SAC") at 1-2, 36-37.) Specifically, plaintiff alleges that Wells Fargo "has created and maintains a credit card program through which it actively encourages retailers to build the 'fees' that these merchants must pay Wells Fargo into the regular price of goods and services, while representing to retail customers that the goods and services that they purchase are being financed at zero percent interest[,]" (the "Program") and, thereby, "misled [plaintiff and class members] into promoting [d]efendants' illegal financing scheme, and into paying unnecessary sales taxes." (*Id.* at 2, 36-37.)

On November 19, 2018, the Court granted Wells Fargo's motion to dismiss plaintiff's initial complaint and provided plaintiff leave to amend. (Dkt. No. 39 ("MTD Initial Order").) Plaintiff filed its first amended complaint ("FAC") on December 6, 2018. (Dkt. No. 40.) On

1  February 8, 2019, following oral argument by counsel on February 5, 2019, the Court granted
2  Wells Fargo's motion to dismiss plaintiff's FAC and provided plaintiff a second opportunity to
3  amend. (Dkt. No. 50 ("MTD FAC Order").) On March 22, 2019, plaintiff filed a second amended
4  complaint ("SAC").

Now before the Court is Wells Fargo's motion to dismiss plaintiff's SAC for failure to state a claim under Rule 12(b)(6).[1] (Dkt. No. 41 ("MTD").) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS** Wells Fargo's motion to dismiss.[2]

### I. BACKGROUND

The background giving rise to this action is well-known, and the Court will not repeat it here. (*See* MTD Initial Order at 2-3 (summarizing plaintiff's allegations); *see also* MTD FAC Order at 2-4 (summarizing plaintiff's additional allegations alleged in the FAC).) Plaintiff's SAC adds a new section to its recitation of facts, "F. Defendants Have Retained and Are Currently in Possession of at Least $842 in Sales Taxes that Are Owed to Named Plaintiff J. Edwards Jewelry Distributing, LLC." (SAC at 29.) Therein, plaintiff includes the following additional allegations:

> The tables below detail the Named Plaintiffs' Jewelry sales transactions which were consummated through the Wells Fargo Program within four years of the filing of the Original Complaint, and reveal the corresponding amounts of sales tax collected by Wells Fargo, the portion of those sales taxes that were remitted to Named Plaintiff, and the portion of those sales taxes that remain in Wells Fargo's possession:

---

[1] The Court has reviewed the papers submitted by the parties in connection with defendant's motion to dismiss. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing scheduled for June 4, 2019.

[2] In support of its motion, Wells Fargo requests that the Court take judicial notice of four New Mexico state court documents. (*See* Dkt. No. 57 ("RJN").) The Court previously took judicial notice of these documents in its orders dismissing plaintiff's initial complaint (*see* MTD Initial Order at 8 n. 7) and dismissing plaintiff's FAC (*see* MTD FAC Order at 2 n. 2) and finds judicial notice appropriate here for the same reasons as stated in those orders. Accordingly, the Court **GRANTS** Wells Fargo's request for judicial notice of these public records. The Court will afford them their proper evidentiary weight.

2

### Table #1: El Paso Location Sales

| Date of Sale | Name of Customer | Gross Amount of Sale | Sales Tax Remitted from Wells Fargo to Plaintiff | Portion of Sales Tax Retained by Wells Fargo |
|---|---|---|---|---|
| 6/28/14 | [Redacted] | 1,104.00 | 62.21 | 18.93 |
| 6/28/14 | [Redacted] | 1,288.18 | 76.09 | 22.09 |
| 6/28/14 | [Redacted] | 3,068.89 | 181.26 | 52.63 |
| 6/30/14 | [Redacted] | 151.55 | 8.95 | 2.60 |
| 7/2/14 | [Redacted] | 7,252.76 | 428.39 | 124.37 |
| 7/3/14 | [Redacted] | 595.37 | 35.16 | 10.21 |
| 7/5/14 | [Redacted] | 1,182.09 | 69.82 | 20.27 |
| | TOTALS | $14,642.84 | $ 861.88 | $ 251.10 |

### Table #2: Albuquerque Location Sales

| Date of Sale | Name of Customer | Gross Amount of Sale | Sales Tax Remitted from Wells Fargo to Plaintiff | Portion of Sales Tax Retained by Wells Fargo |
|---|---|---|---|---|
| 6/28/14 | [Redacted] | 2,833.36 | 160.21 | 46.51 |
| 6/30/14 | [Redacted] | 2,209.55 | 124.93 | 36.27 |
| 7/18/14 | [Redacted] | 6,723.88 | 380.18 | 110.38 |
| 7/19/14 | [Redacted] | 208.65 | 11.80 | 3.42 |
| 7/29/14 | [Redacted] | 2,922.17 | 165.23 | 47.97 |
| 8/1/14 | [Redacted] | 4,999.04 | 282.66 | 82.06 |
| 8/15/14 | [Redacted] | 8,702.00 | 492.03 | 142.85 |
| 8/16/14 | [Redacted] | 4,257.53 | 240.73 | 69.89 |
| 8/16/14 | [Redacted] | 3172.55 | 179.38 | 52.08 |
| | TOTALS | $36,028.73 | $2,037.15 | $ 591.43 |

Plaintiff states affirmatively that none of the transactions tabulated in Table #1 and Table #2 above were undertaken or consummated in violation of the consent decrees entered into by Plaintiff with the New Mexico Attorney General because (1) paragraphs 9 and 17 of the August 28, 2012 Partial Stipulated Consent Decree (Doc 42-1, Exh. C pp. 5 & 7) specifically allowed Plaintiff to offer financing through the Wells Fargo and other third party programs; and (2) paragraph 14 of the August 28, 2012 Partial Stipulated Consent Decree (Doc 42-1, Exh. C, p. 6) specifically deferred "the question of whether credit card payments may be accepted by JED when discounting from the sticker price"; if the parties themselves could not resolve that issue, it was – according to the terms of paragraph 14 – to be "submitted to the Court for its determination."  This precise issue was neither resolved by the parties nor submitted to the Court.  Thus, it was not addressed in the Amended and Final Consent Decree entered on August 20, 2013.  (Doc 42-1, Exh. D.)

The New Mexico Attorney General specifically allowed Plaintiff to continue utilizing the Wells Fargo Program and its associated discounts that are at issue in this case because the New Mexico Attorney General simply did not understand

> that the Wells Fargo Program was violative of the federal Truth in Lending Act. And – until its sales taxes were audited in 2016 – neither did Plaintiff. Indeed, the discounting that the New Mexico Attorney General took issue with, and which were the subject of the New Mexico consent decrees, were separate and distinct discounts from those discounts at issue in this case offered through the Wells Fargo program.

(SAC at 29-32.)

Additionally, and relevant to the instant motion, plaintiff adds the following in support of his UCL cause of action: "More specifically, for purposes of damages and the statute of limitations, each of the transactions referenced in section VII.F. of this complaint, standing alone resulted in a separate and independent violation of Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, *et seq.*" (SAC at 37.)

Plaintiff's SAC also eliminates the FAC's discussion of the investigation of J. Edwards by the Albuquerque office of the New Mexico Attorney General (*compare* FAC at 24-25 *with* SAC at 24-25) as well as the FAC's sections titled "Fraudulent Concealment Allegations" and "Tolling of the Statue of Limitations" (*compare* FAC at 30-34 *with* SAC at 27-29). Otherwise, plaintiff's SAC is identical to the FAC filed on December 6, 2018.

Plaintiff's SAC also attaches six exhibits, identical to Exhibits 1-4 and 6-7 attached to the FAC as well as the initial complaint. (*See* Dkt. Nos. 1-1, 40-1, 55-1.) The SAC eliminates Exhibit 5 to the FAC as well as the initial complaint, an email from Lori Chavez of the New Mexico Attorney General's Office to Steven D. Looney regarding "J. Edwards Question of Law" dated October 11, 2012. (Dkt. No. 40-1, Ex. 5.)

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its

face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**III. DISCUSSION**

A claim for violation of the UCL must be brought within four years of the date the cause of action accrues. Cal. Bus. & Prof. Code § 17208. Under California law, a "cause of action accrues when [it] is complete with all of its elements—those elements being wrongdoing, harm, and causation." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (internal quotation marks and citations omitted). Said another way, "a UCL deceptive practices claim should accrue only when a reasonable person would have discovered the factual basis for a claim." *Id.* at 1195.

As in its FAC, plaintiff's SAC alleges that Wells Fargo "has created and maintains a credit card program through which it actively encourages retailers to build the 'fees' that these merchants must pay Wells Fargo into the regular price of goods and services, while representing to retail customers that the goods and services that they purchase are being financed at zero percent interest[,]" and, thereby, "misled [plaintiff and class members] into promoting [d]efendants' illegal financing scheme, and into paying unnecessary sales taxes." (SAC at 2, 36-37.)

In its Order on defendants' previous motion to dismiss, the Court found that as of October 2012, plaintiff had notice that Wells Fargo's credit card Program constituted an illegal financing scheme under the Truth in Lending Act ("TILA") and the Electronic Fund Transfer Act ("EFT"). Based thereon, plaintiff reasonably could have discovered, and seemingly did discover, the factual basis for its UCL claim that it had been misled regarding the nature of that financing scheme and

therefore the statute of limitations on plaintiff's UCL claims against Wells Fargo regarding the alleged illegal financing scheme expired in October 2016. (MTD FAC Order at 6 (citing *Aryeh*, 55 Cal. 4th at 1195; Cal. Bus. & Prof. Code § 17208; *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013).) The Court based this determination on (1) allegations in the FAC that the Attorney General's office contacted J. Edwards in October of 2012 and informed plaintiff of the office's position that although the TILA and EFT do not apply to J. Edwards, "the application of discounts, previously utilized by J. Edwards, constitutes a hidden finance charge" as defined by those statutes (MTD FAC Order at 6 (citing FAC at 24-25)); and (2) the exhibits attached to the FAC show that plaintiff learned of the allegedly illegal nature of Wells Fargo's credit card Program as a result of the New Mexico Attorney General's investigation and lawsuit (*Id.* (citing FAC, Ex. 6 at ECF 53; Ex. 7 at ECF 57)).

The fact that plaintiff has now eliminated these allegations and this exhibit from its SAC does not impact the Court's analysis. *See Stanislaus Food Products Co. v. USS-POSCO Industries*, 782 F.Supp.2d 1059, 1075 (E.D. Cal. 2011) ("The Court does not ignore prior allegations in determining the plausibility of current pleadings."); *see also Cole v. Sunnyvale*, No. C-09-05017 RMW, 2010 WL 532428, *4 (N.D. Cal. Feb. 9, 2010) (noting that a court may "consider the prior allegations [from earlier complaints] as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*"). In other words, J. Edwards cannot avoid application of the statute of limitations by simply deleting from its amended complaint allegations evidencing its discovery of the factual basis of its UCL claim.

As it did in opposition to the previous motion to dismiss, plaintiff again avers that Wells Fargo's conduct subjects it to the "continuous wrong" and "continuous accrual" principles of statutes of limitation and, therefore, that plaintiffs incurred an injury in fact under the UCL within four years of the initiation of this action. (Dkt. No. 58 ("Opp.") at 6-9.) Although plaintiff's SAC responds to the Court's footnote that "the FAC does [not] include any information or allegation regarding transactions occurring within the four-year window immediately preceding filing of the initial complaint" (MTD FAC Order at 7 n. 5) by including allegations of "jewelry sales

1 transactions which were consummated through the Wells Fargo Program within four years of the
2 filing of the Original Complaint" (SAC at 29-32), plaintiff still fails to provide any persuasive
3 authority for finding that compliance with federal, or state, law constitutes a continuing obligation
4 for UCL purposes within the meaning of the continual accrual principle as opposed to that
5 applying to consumers or contracts.[3]

Plaintiff asserts TILA as the sole basis for finding a continuing obligation to support a finding of continual accrual of its UCL claim. (*See* Opp. at 6-9.) However, every federal court to consider the issue has determined that consumers are the only persons who have a cause of action under TILA. *See, e.g.*, *Johnson v. Ocwen Loan Servicing*, 374 F.App'x 868, 874 (11th Cir. 2010). (*See* Opp. at 7 (citing *Bilyue v. Guy*, No. CV 17-4546 FMO (ASx), 2017 WL 7066400, at *1 (C.D. Cal. 2017) (applying the theory of continuous accrual to plaintiffs' UCL claims and finding that plaintiffs may recover under a recording contract for the four years preceding the filing of the

---

[3] Plaintiff's citation to *Small Axe Enterprises, Inc. v. Amscan, Inc.*, does not persuade. (Opp. at 8 (citing *Small Axe*, No. 16-cv-00981-BEN-WVG, 2017 WL 1479236, at * 6 (S.D. Cal. Apr. 25, 2017)).) In *Small Axe*, the court found that the continuous accrual doctrine applied where plaintiff had alleged that defendants had engaged in the continuous sale of their products in violation of the Lanham Act. *Small Axe*, 2017 WL 1479236, at *6. In support of this conclusion, the court cites only to the California Supreme Court's decision in *Aryeh*. *Id.* (citing 292 P.3d at 875-881). In *Aryeh*, the California Supreme Court explained that "[t]o determine whether the continuous accrual doctrine applies . . . , [a court] look[s] not to the claim's label as a UCL claim but to the *nature of the obligation allegedly breached*." *Aryeh*, 292 P.3d at 881 (emphasis supplied). There, the court found that because pursuant to the applicable rental agreement between the parties the defendant, Canon, billed plaintiff Aryeh on a recurring monthly basis, "the duty Canon owed—the duty not to impose unfair charges in monthly bills—was a continuing one, susceptible to recurring breaches[,]" Aryeh was not foreclosed from seeking recover for charges to the extend they fall within the four-year statute of limitations period. *Id.* Here, plaintiff has not alleged a duty or obligation arising out of a contractual obligation. (*See*, *generally*, SAC.)
  Moreover, plaintiff's claim is factually distinct from that in *Small Axe*. In *Small Axe*, the plaintiff's allegations included a claim for violation of the Lanham Act, the continuous nature of which formed the basis of the court's finding that the continuous accrual doctrine applied. Here, plaintiff asserts, as the sole basis for a continuing obligation, the fact that defendants were obligated to comply with the TILA. (*See* Opp. at 6-9.) Although the Court did not address the sufficiency of plaintiff's TILA claim, found in the initial complaint, in its November 18, 2018 Order granting defendants' first motion to dismiss (MTD Initial Order at 7 (noting that plaintiff conceded that its TILA claims were time-barred)), TILA is a consumer protection statute. *See* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the *consumer* will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit and to protect the *consumer* against inaccurate and unfair credit billing and credit card practices.") (emphasis supplied).

7

complaint).)[4] Accordingly, plaintiff again fails to allege any ***continuing obligation*** underlying that harm of which it was a party.[5] (*See* Opp. at 12.)

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Wells Fargo's motion to dismiss. Plaintiff requests leave to amend "to address any pleading issues the Court raised for the first time in its Order on Defendants' second Motion to Dismiss."[6] (Opp. at 29-30.) In support of this request, plaintiff explains that it did not address in the FAC the statute of limitations issue the Court addressed in its Order on defendants' second motion to dismiss, because the Court's first order did not address did not address this issue. (*Id.* at 30.)

Because this Order is again based upon the statute of limitations issue addressed in the Court's February 8, 2019 Order on defendants' second motion to dismiss, plaintiff has already had multiple opportunities to amend its complaint, including an opportunity to respond to the Court's February 8 Order addressing the statute of limitations issue addressed herein. *See* MTD FAC Order; *see also Nat'l Council of La Raza v. Chegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Accordingly, the Court **DISMISSES** plaintiff's SAC with prejudice.

---

[4] *See, by contrast,* cases regarding ongoing contractual obligations: *Tsemetzin v. Coast Fed'l Sav & Loan Ass'n*, 57 Cal.App.4th 1334, 1344 (1997) (finding that the statute of limitations commenced under a rental agreement for each month when the increased payment was due pursuant to rental contract and not paid); *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1388-89 (2004) (finding that because performance of underlying contractual obligations is severable due to monthly payment obligation and therefore created a recurring obligation); *Walker v. Blackground Records, LLC*, 2017 WL 8186040, *4 (E.D. Cal. 2017) (finding continuous accrual where defendants allegedly failed to make "periodic" payments owed under various recording contracts).

[5] As the Court previously noted in its February 8, 2019 Order, the Program dealer agreement, which plaintiff attached to each of its complaints, provides for termination by either party at any time, specifying that the agreement "will remain effective until one party gives the other party written notice of its decision to terminate" the agreement. (Dkt. No. 55-1, Ex. 1 ("Agreement") ¶ 10(a); *see also* MTD FAC Order at 8 n. 7.) Once again, plaintiff has not alleged that it was forced to remain a party to the agreement. Nor has plaintiff alleged that the customer's use of the Program resulted in a recurring payment scheme that might create a continuing obligation. (*See* SAC at 18-21 (describing a Program transaction as a one-time exchange between customer, Wells Fargo, and plaintiff); *see also* MTD FAC Order at 8 n. 7.)

[6] The Court notes that this appears to be a typographical error and that, based upon plaintiff's explanation of the basis of its request, it intended to ask for an opportunity to address any issues raised for the first time in the Court's order on the instant motion to dismiss, which is defendants' third such motion.

8

This Order terminates Docket Number 56.

**IT IS SO ORDERED.**

Dated: May 31, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**